which is case number 25-50293, FBCC CityPoint v. Austin et al., City of Austin et al. And we'll begin with Kevin Tirasas. Tirasas, Your Honor. Thank you. Tirasas.  Yes, Your Honor. Okay. May it please the Court. There are three primary reasons the District Court erred in granting summary judgments. First, the violations at issue in the Buildings and Standards Commission appeal are different from those used to place FBCC on the repeat offender list. Because they have a different set of operative facts, res judicata could not apply. Second, the Buildings and Standards Commission did not have jurisdiction to place FBCC on the repeat offender list because it is statutorily limited in what it can do. As such, FBCC's appeal of the Building and Standards Commission's fines did not involve and could not have involved a challenge to the repeat offender program. Third, refu of the Building and Standards Commission's fines was statutory limited to the decision that the Commission panel made. And FBCC could not obtain the relief that it sought in this lawsuit. As an example, FBCC could not have enjoined the repeat offender program or actually received any other injunctive relief. I want to first start with the different set of operative facts. And one thing to note here is that the city has gone kind of back and forth in its briefing and in the summary judgment arguing that Winter Storm Uri had nothing to do with the underlying repeat offender program and then at one point suggesting that maybe it did. I think it's important to look at the record. Well, I do see inconsistency, possibly, but I think they largely agree with you that the underlying violations, 2019-2020, really didn't implicate Uri. That would suggest your argument. But in your pleadings in the two lawsuits, it's a copy-paste practically. In other words, the second lawsuit embraces, not just in the statement of the case, but in the actual causes of action, precisely the same one-transaction operative theory. I don't, respectfully, Your Honor, I don't think that we're embracing a one-transaction operative theory. But you say all of this came about because they wanted to punish us for our lack of response to Uri. We say, yes, they wanted to punish us. That's what you said. Absolutely, Your Honor. That is different from the BSE fines. They were an issue in what was being challenged in the state court. What was challenged in the state court was very specific to those violations, and it's very specifically listed in the state court. I guess I'm saying, you know, normally when we're looking at claim splitting, we look at your two lawsuits, and in this case, when you look at the two lawsuits, not only is there, as I said, copy-paste, the same facts are described, the same theory is that the city had a political campaign out to get you. So why doesn't that alone, just the way you pled it, trigger race judicata? Because, Your Honor, I think that those are atmospheric facts that don't go into why FBCC was placed on the repeat offender program, and I think you have to look at what relief that is being sought in the case where we are very specific in the complaint, for example, record pages 151 and 152, to the effects of the repeat offender program. Comparing that to the petition in the state court, record 2985. Yeah, but 151 is what I was looking at. You stated there, this is in the second suit, punishing a landlord for property damage caused by a natural disaster. There is no rational relationship. So there, too, even in that claim one, and on the preemption claim, again, you say the city is penalizing us for failing to repair damage caused by a winter storm. So I'll press the other side, but it does look like your pleadings mixed the two. And, Your Honor, what I would say is that in terms of our pleadings or asking about the repeat offender program, the issue arises in the later actions in terms of keeping us on the repeat offender program and moving forward with that. But that is a separate thing from the fine themselves. And one of the things I would point out here in the difference between What's your best Texas case on race judicata, that even if it looks like the two separate lawsuits are cross-incorporating identical facts, nevertheless you look behind what's pled to ask, well, in truth, are the violative acts the same or not? I would say the Whalen case, Your Honor. In the Whalen case, what happened was it was actually kind of a little bit of a reverse where the city of Houston attempted to, what the other side said, was to basically use the same operative facts for different sorts of relief. And what the court there said, and it cited also to the Jamestown case, which is a Fort Worth case, which is 83 Southwest 3rd, 376, and said that there's a difference between what the BSC panel can do versus what a municipality can do. It's completely separate. I won't say completely separate, but it's separate relief that can be invoked between either one. And so that said that res judicata did not apply in that circumstance. But that's a separate argument than the pleadings aren't one and the same. This is the separate argument I thought that you were making, is you couldn't even have brought your constitutional claims. That's correct, Your Honor. That's a separate argument. But that responds then to our court's decision in the Cox v. Neuse's case where we, let me just read it because this seemed pretty conclusive. Texas precedent makes clear constitutional claims can and should be brought in state court reviews of civil service commission findings. Yes, Your Honor. And in the Cox v. Neuse's case, that was involving employment action concerning First Amendment and issues there. And the difference between Cox and City of Dallas and those others is that in those cases, if they had won before the commission, it would have resolved the issue because the employment action would have been reversed. Here, we won before the commission at the state court and it didn't resolve the issue. We could not resolve the issue there. You won as to the URI violations and it was no analysis at all. It was just vacated, right? That's correct, Your Honor. That's correct. But those were resolved in terms of the violations, but that was separate and apart from the repeat offender program, which is what is being addressed here. But, I mean, res judicata is not just the exact same thing has been filed again. It's that it could have been filed. Why could it not have been filed? Because, Your Honor, the BSC was limited in jurisdiction and the review of the orders were limited, specifically in the statute under 54.036. Sorry, it's Texas local government code, 54.036. It says what a commission panel can do. It can do things like order repairs, declare a building substandard, order the immediate removal of persons or property. It does not and cannot address something like the repeat offender program. It is not allowed to do that. I was looking at 54.039. You're citing 54 what? 036, Your Honor. I'm going to get to 039 right now as well. In 54.039, that's the judicial review of the BSC orders, and it's very important here because that says specifically that court action is limited to directing a writ of certiorari to the panel, and it describes the panel as being the commission panel here. In addition, it says that it limits review to a party that is aggrieved by any decision of a commission panel. It is also limited, of course, to substantial evidence review in this, and so there's no discovery. There's no anything else that can happen in there, and so the BSC fines not only being separate in terms of what established the repeat offender program, which is what is being challenged here, but also the fines themselves are limited to what the BSC could do, and that's what was being challenged. That's the only thing that could be challenged there. This was not the same nucleus of operative facts as you find in the files. Two different arguments, right? One, you're saying not seeing nucleus of facts. Difficulty with that is you seem to cross-incorporate both. Totally separate is you couldn't even, I guess, in May of 2021. Yes, Your Honor. Because the ROP, that's how I think of it, gets dropped on you in March. Right. And then the URI violations are alleged somewhere in that time period too, right? After, but yes, Your Honor, around there. Okay. I mean, some of the violations. And then you file the first suit maybe June, so you're fully aware of the ROP, and you are saying you made a decision not to aggregate because the BSC couldn't even consider it. That's correct, Your Honor. And your best authority besides citing to us these municipal regulations that I'm, you know, we'll hear from opposing counsel, but do you have any case that clarifies exactly the point you're making, that the BCS could not hear the constitutional attack on the ROP? You understand my question? Yes, Your Honor, in terms of could not hear, I think going back to the Whalen case again, where it talks about how the relief that was requested in Whalen at that time could not have been done in the earlier proceeding, in the administrative, the panel proceeding before, and so that's why there wasn't res judicata there. All right. So my question, tell me if it's not an intelligent one, and it's a divisibility issue too. Number one, you're saying not seeing those facts. Number two, you couldn't even go on. That's why you brought the second suit. That's right, Your Honor, and also that the commission itself, and sort of a third point on that, the commission itself couldn't, it was not involved. There's no evidence that it was involved with the repeat offender program. And I do want to highlight when we're talking about the same set of operative facts here, that this is summary judgment, and so if there's a fact question as to what was, whether it was the same operative facts or not, then that's something that would say that the summary judgment should have been denied there. This wasn't something where we've got some clear record that says the exact same violations were at issue or anything like that. Instead we have the opposite, where I believe that the operative violations that led to the repeat offender program, as the city will say, that that was different from what led to the violations from the commission. I mean, often we do see res judicata, and the critique of the party that's trying to avoid it is they lost once, they split their claims to have a second fight. Obviously here you won. Right. And there's no analysis that's brought over. But those, whether you won or lost, doesn't really affect our assessment of res judicata, does it? I think it does a little bit, Your Honor, because again we couldn't get the relief that was requested in, excuse me, we couldn't get the relief in the BSC suit. It didn't resolve the issue. That's different from the Cox v. Nueces case. That is different from the city of Dallas v. Stewart case, where we're involving a nuisance and a taking. And the court analyzed it and said, the Texas Supreme Court said that a nuisance is basically a form of taking. And if they would have won, if the claimant would have won there below and said this was not a nuisance so the house would have stayed standing instead of being demolished, there wouldn't have been a taking at all. I do think that it's important that we won below in the state court and that it didn't resolve the issue because it shows that it's not the same nucleus of operative facts there. Your Honors, I have about four and a half minutes left. I do not want to dismiss the issue of Mr. Thompson and his exclusion on there. I know it's not a major issue, but I want to make sure I'm not waiving that if there's any questions. The magistrate probed it a lot and pretty much, as I understand it, said I'm going to let you testify about the six million reputational injuries, but I'm not going to let you testify of something you have a, quote, Generally, yes, Your Honor, but what I would say, too, is that there wasn't a determination. I mean, that would have been for summary judgment where the court made a determination that those, that that fact meant that Mr. Thompson couldn't testify. And again, that's a summary judgment type thing, just like here. I mean, technically, Mr. Thompson was completely limited now because he can't testify at all since there's a summary judgment on Rose G. Thompson. He was going to testify there were how much of rental injuries? That's right, Your Honor. No, but how much just was it? What was the proffer? It was about $85,000. $85,000. Yes, Your Honor. As opposed to six million reputational injuries. That's correct, Your Honor. It was a very, very small issue on that, but also there was no challenge to his methodology. There was no challenge to his credentials. There was a challenge just simply to the underlying fact of whether or not this could even be damages. And that's something that is more appropriate for summary judgment where the court decides, oh, okay, claimant, you can't get, claimant, you can't get those damages. And therefore, Mr. Thompson, no one can testify about it. Right now, as it stands, people could potentially testify about that issue except for Mr. Thompson. And that wouldn't be, that's not what. It was undeniable they were suspended, and it's, I think, undeniable that the e-mail says keep on renting anyway. I thought his, once that became sort of apparent, I thought Thompson's response was, well, maybe some of the units actually weren't rented. In other words. That actually wasn't necessarily his response, Your Honor. What he said was, he said, no, I just did an analysis on November, December, January. What was vacated and what wasn't vacated. That's right, Your Honor, and took into consideration what would be vacated no matter what just from normal issues outside of this program. So all he was doing was simply calculating damages. He wasn't making an assessment as to whether or not the repeat offender program suspension actually was effective, wasn't effective, anything like that. He was just doing damages. And that's why the limitation was improper. It was better for cross-examination. And, Your Honors, I know that there is a number of different issues that were not addressed in the summary judgments. Our position, of course, is that because it wasn't addressed, that that is better for the district court to address in the first instance. And we would just point the court to the McClendon v. U.S. case, 892, F3rd, 775, as well as the PHH mortgage case, which is 80, F4th, 555. I don't believe there's a compelling reason here to decide a number of issues that the district court should pass on those first. If that's it, I have one other question. Yes, sir. If you were to not prevail, so we interpret Texas law, race judicata expansively, would there be, can you foresee negative consequences in other areas of Texas law? If we said race judicata applies here in these circumstances, your clients, would that be disruptive to the law that you can just thinking creatively in any way? Yes, Your Honor, because especially when we're talking about cities, municipalities, those types of things. Where's the limit? We raised in our briefing at one point to say, okay, so if you're saying with the Building Standards Commission that anything that's related to the city could be brought here, even though the Building Standards Committee didn't have authority, didn't have jurisdiction statutorily, the review was limited. If we're saying that anything you have against the city, an animal control issue, a slip and fall negligence issue, somebody hitting a car that involves FBCC, basically what someone could read it is to say that would have to have been brought in this BSC administrative appeal with substantial evidence review with no discovery would have been brought there. Could not have been brought in federal court, could not have been brought anywhere else, and that you are barred if you don't. I don't know. Your Honor, may I finish? Finish your sentence. Thank you. I don't know whether or not courts would agree with that eventually, but I think it opens the door to that, and that wouldn't be brought. Okay. Thank you. You've saved a little time for rebuttal. We will now hear from Hannah Ball, City of Austin. Yes, Judge, Hannah Ball on behalf of Appalese. Good morning, and may it please the Court. When a defendant holds in its hand a piece of paper labeled final judgment at the top, that piece of paper provides that defendant with security and peace of mind that the litigation is finally concluded, not just as to claims that were raised in that lawsuit, but as to related matters that could have been raised in that lawsuit. Now, what happened here is Mueller-Flatts' owner sued in state court to challenge the city's escalated enforcement efforts at its Mueller-Flatts apartment complex post-Winter Storm Yuri. And Mueller-Flatts' owner prevailed in that state court case and obtained a final judgment vacating 15 Building and Standards Commission orders ordering repairs on penalty of weekly accruing fines and thereby wiped out, I believe, over $1 million, maybe up closer to $2 million in accruing fines through that successful lawsuit. And then 49 days later, Mueller-Flatts' owner sued again, challenging the city's escalated code enforcement efforts at the Mueller-Flatts apartment complex, again following Winter Storm Yuri. And raised judicata bars that reopening of that state court judgment. I have several problems with that. You've heard me probe. In other words, it seems like your client, the city, repeatedly tried to clarify the facts were different, even with the slide presentation underlying the ROP. You said, oh, wait a minute, we put one in relating to Yuri, not implicated here. This case is 2019-2020, has nothing to do with Yuri. So how doesn't that alone mean the operative nucleus is just totally separate facts? Yes, Judge, I appreciate the question. So certainly the violations that led to Mueller-Flatts' being placed on the repeat offender program ROP predated Yuri. But the fact of the matter is that the escalated enforcement efforts and the building and standards commission order and then the requiring Mueller-Flatts to register with the repeat offender program and the appeal of that, all of that happened in a matter of three months. Right, but that's sort of handing you the keys. That almost validates their fear, their atmospheric whatever, that the old stuff wasn't going to be looked at until you couldn't get them on Yuri. So there was a political campaign, look at the old stuff. But it doesn't change the underlying facts. The old facts had nothing to do with the Yuri facts. And I think I push back a little bit on the idea that the Yuri facts had nothing to do with the repeat offender program. Okay. In particular, the facts that led to the suspension. So the Mueller-Flatts was placed on the repeat offender program for violations not related to Yuri. 525, violations all. Correct. Okay. But then when the city provided this notice of suspension, notice of intent to suspend its rental registration, and then the letter saying that its rental registration was suspended, those included Yuri-related violations. And also, there's more overlap to, and you're correct to point out this PowerPoint presentation. I thought the Yuri violations were all vacated essentially because the city didn't give them permits, so it couldn't violate them if it wasn't allowing the fixing. But permits had nothing to do with what put them on the ROP. So in the state court case, the final judgment vacated the Building and Standards Commission orders that ordered Mueller-Flatts' owner to make the repairs on penalty of fines. But what it didn't do is vacate the underlying notices of violation, even though Mueller-Flatts' owner asked as relief in the state court case not just that the orders be vacated, and actually the provision that they rely on, Local Government Code 54.039, it provides for Building and Standards Commission orders to be affirmed, vacated, or modified. But they sought relief beyond that. They sought relief to actually vacate the underlying notices of violation, and that relief was not granted in the state court case. I mean, part of me thinks it's the chaos post-Uri. Nobody wants to violate, but the city's not able to give people the permits to fix. So they dash into court immediately after Uri, and they get one word, vacated. They win. But I still am really not understanding how that one word, where they win, is raised judicata as to constitutional claims pertaining to violations that predated Uri. Appreciate the question. Maybe address the Whelan case. The Whelan case, I think the district court opinion dispenses with the Whelan case very well and is good on that. But the Whelan case, first it doesn't, it first says raised judicata is not a jurisdictional matter, so you've waived raised judicata because you didn't assert it and argue it below. But then it goes on to kind of opine on raised judicata and say, and the argument, it's kind of the converse of this case, but the argument was, city, you didn't ask for attorney's fees and other relief in the building and standards commission proceeding, and therefore you're barred from getting it. Well, that makes sense. They're indivisible, the two, the fees for the violation. But here, what they're really saying, and this goes to maybe this goes to the municipal code, they're saying they couldn't even bring the constitutional attack before the BSC. And that's, and they're just flat, respectfully, they're completely wrong on their understanding of how this process works. So they, local government code 54.039 allows for judicial review of building and standards commission orders. And it provides for how that will work, substantial evidence review, but nothing precludes the jointer of additional claims. And in fact, they did join additional claims in the state court case because they asked not only for the court to find that substantial evidence didn't underlie the decision, but they also asserted due process violation. They said that the city requiring them to repair within a certain amount of time, but not allowing them to get the proper permits to make the repairs put them in an impossible position and therefore violated due process. And, Your Honor, additionally, and I think this is kind of maybe the clearest way of seeing how these cases overlap, is that they also asserted a preemption claim in the state court case. They said that the city requiring them to repair within a certain amount of time was contrary to the Texas property code, which allowed them to wait until they received insurance proceeds because this was an insured casualty event so they wouldn't have to make the repairs. Okay, so to my understanding, I appreciate this is granular, you're saying in the first lawsuit they brought to the building standard commission both a due process attack and a preemption attack. They brought them both themselves. Yes, well, they argued it before the buildings and students commission, and then they also argued it in district court when they appealed that decision and sought judicial review. I mean, that's very helpful. Do you have a case that sort of confirms that these constitutional issues are the province of the BESC? Well, not that the BESC would first decide the constitutional issues, but the city of Dallas v. Stewart case stands for the proposition that not only can you bring constitutional claims alongside an appeal of a building and standards commission order, you actually must bring it if... Once you step into court. That doesn't necessarily say they're brought originally in front of the BESC? Yes. It's just only if you lose, then you can, and your position is must when you sue in court? So, Judge, the city of Dallas v. Stewart case, so there the building and standards commission order is that the property is a nuisance and therefore it can be demolished. And so the property owner, if the property owner is saying actually it was a taking to demolish this property, then that claim must be brought alongside the claim that the order is invalid. Because if the property is not a nuisance, then it was a taking, and then if it is a nuisance, as the building and standards commission found, then there's no taking. I'm not sure I'm answering your question exactly. No, I think you are. That's helpful. Okay. And then I would also add, in general, I think administrative agencies don't necessarily have jurisdiction to decide constitutional questions, and constitutional questions are brought in district court or brought before a judge. But I think that doesn't decide the question of whether Mueller Flats needed to have brought its constitutional challenges alongside its building and standards challenge to the building and standards commission order. But the Texas Joinder rules, 51A, very liberal, there was absolutely nothing that barred them from raising the repeat offender, the challenges to the repeat offender program at the same time. Yeah. Just again, part of my discomfort is that is a pretty new and draconian system. We've seen it a couple times in this court, the repeat offender programs. They may be very effective, but they are, as you've seen in this case, $60 million of lost income. To me, it is understandable that any landlord, immediately after URI, would try to get rid of the URI-related violations quickly, but might not be able to assemble a lawsuit attacking an earlier set of violations that put them into this vast program. But the position of the city is they had to put it all in there immediately in June of 2021, or they've lost it. That's your position. Yes, Judge. And I would push back a little bit on the idea that this program is terribly draconian. And I think that the SO apartments case that this court decided. I was on that panel. So actually, there's, the apartment complexes argued that all of this stuff was so terrible, they couldn't sell the apartments and the court just kind of rejected that and rejected the idea that if you're, you know, that there was any procedural due process violation in how they were placed on the program. I think there's a lot of similarities between the PAPE program and SO apartments in this case. But I would also add that, yes, there was a deadline to challenge the building standards commission order that the apartment complex would have to move quickly, but still the state court case wasn't concluded until 2022. So they could have amended the ruling. Correct. Correct. There's a third lawsuit against the city. Yes, Judge. For not electricity. Is there an argument there? Oh, they should have put that one in too. Is race judicata going to surface there too to block their pursuit of that litigation? I depends on what we say. Maybe so. I am not sure. I'm just saying it puts a huge amount of burden on maybe not in this case, but small landlords, you know, to get it all right and assemble everything constitutional due process, and teeny little nuisance violations and put it all in at once in the middle of the post hurry sort of chaos. Otherwise they foreclose it, even if they win on their nuisance case. Maybe so, but I think that's, that is pushing against that argument and, and is the argument for efficiency efficient. Yeah. To avoid just constantly la la la la la la. And so all these different cases that that can be a little bit too much for the other side. If you're just going to do every single thing in a different case. Yes. You could have all put together. That's the whole point. Get it done and move on. Yes, judge. And it's, it's not just efficiency for the, and, and for the defendant, it's for the judiciary and for the judges that will have to. Oh yeah. I mean, I was a state district judge. I wouldn't have wanted to get a hundred cases on something that could have been one. It certainly sounds efficient, but what about his comments at the end? This, this efficiency could be quite brutal. You get an animal violation and that forecloses you from bringing all sorts of separate different facts, constitutional claims because he didn't put it all with your animal violence, whatever his hypo was. Yeah. It's very brutally efficient. I agree with that. It saves the courts a lot of time might say the city a lot of time, but it puts a hell of a burden on individuals. And I think the transaction test takes care of that because it's not as though we're saying, you know, if FBCC had a claim that there was an open meetings act violation and how the city passed its budget, then it would have to litigate that alongside a claim that the city should have approved its site plan applications. I agree. And then that does get back to my fundamental difficulty in this case. I do see some aspects. I see same transactions in the way they pled it, the copy paste problem, but I don't see same transactions in the underlying facts. Would you agree with that? And that that's the perplexity here. Well, I think, um, let's run it through the same transaction test. Um, and I think I'm losing my notes. Uh, and I think there's some, um, comments in the risk, the restatement, the second restatement of judgments, um, uh, section 24, uh, I'm not sure which edition, I'm sorry, judge. Um, but it has some helpful material there. First, it says it advocates for a broad view of what constitutes a transaction. And it says there was in, in olden times, you know, there was a difference between what section are you reading from? Um, so, uh, we used to differentiate between equitable relief and relief at law. And we used to differentiate between, uh, trespasses to property and person. And the more modern trend is to kind of have a broader view of what constitutes a transaction. Um, and it also says, uh, comment B, no single factor is determinative. And if you're thinking about overlap and witnesses proof, um, if there's overlap there that suggests raised judicata, but even if there's no substantial overlap, um, there's still can be raised judicata. Um, and so going to the test. So the test is supposed to be pragmatic and you look at the factors that include, um, uh, whether they are related in time, space, origin, motivation, and there we have exactly that, I think. Initiated by the city same time, but actual underlying supported violations, not at all the same time. Yes. Um, but I, I think, um, the best answer to that question or that, that point is the Armadillo group hotel case. So in that case, as a circuit case, um, uh, it involved a counterclaim. So employees, uh, sued, um, and the, the parties are a little bit odd, uh, sued for, uh, unjust enrichment said that they were trying to be part of this venture joint venture and they didn't get their proper share of the profits. And then there was a counterclaim that, uh, the employees kind of, uh, uh, we're not, um, reaching their fiduciary duties. And then there was a separate subsequent lawsuit that the employees, um, took, uh, confidential information or misusing trade secrets. And there was, um, and then the argument was, oh, this wasn't one transaction because, uh, what we're talking about is the time after the employment, when the employees were using trade secrets after the employment and the court said, no, it's really one transaction, even though there are distinct time periods. There's a time period during the employment, there's a time period after the employment. So I think, um, even if the time period is not exactly the same in the two cases, there's that significant overlap councils in favor of raise to Dakota and viewing it as one transaction or one series of transactions. Um, and then in terms of origin or motivation, I think whether you credit the city's view of it's it's motivation, which is that it wanted compliance with code or, um, FBCC's, uh, view of the city's motivation that it was all politically motivated and wanting to make an example out of the Mueller flats apartment complex. Those two theories of motivation are the same in the state grace and the federal case. Um, and then the trial unit convenience and kind of the overlapping proof. And there, again, I think the, the preemption claim is the clearest cut, uh, a way to see the commonality between the two cases, uh, that preemption was argued in the state court case and it's a claim in the federal case. Um, and I see I'm almost out of time. Okay. Thank you. So thank you. And we will now hear the rebuttal. May I please the court. I want to start with the RV resolution trust corporation case from the Texas Supreme court. It's eight 37 Southwest second six 27. And it says inciting the restatement going back to the point there, it says a transaction is not equivalent to a sequence of events. The determination is to be made pragmatically giving weight to such considerations as whether the facts are related in time, space, origin or motivation. And then it continues on. It says, whether they form a convenient trial units and whether their treatment as a trial unit conforms to the party's expectations or business understanding or usage, you can get placed on the repeat offender list just simply by having five violations, whether or not they relate to health and safety, whether or not they relate to anything. And one of those violations can be simply not paying a fine. And that's within a 24 month period. Notably here, we got admissions from the city that even some of the violations or alleged violations that occurred to put FBCC on the repeat offender list were actually not violations. Those were the transactions that led to the repeat offender program and all the harm that's being challenged here. That is separate from, and the city even admits separate from the transactions that formed the violations related to the BSC proceeding that were vacated. We are challenging the constitutionality of the repeat offender program that could not be challenged against the BSC. Okay. But, but they, they point out that you actually brought preemption due process in the first state litigation. And the state litigation said they could not address that, that that was not available to them because they were doing a substantial evidence review and limited to. What's your record set for that? Or is it in your brief? I don't know. It's in either. Your Honor, I was part of that proceedings and I can just tell you that it wasn't, it wasn't part of it. I understand that you should preface it with, as an officer of the court. I apologize. That's a sort of crucial fact. Yes, Your Honor. But you, you, you did or you didn't bring a preemption due process. You thought that you could in that forum. You're now saying somewhere they said you couldn't. No, Your Honor. So they said we couldn't. Well, there's no record evidence. Yes, Your Honor. And as an officer of court, there, there is no record evidence. So from your, as an officer of the court, where were you told you could? By the court, Your Honor. Verbally. Verbally in the state court. Yes, Your Honor. But what I would say is, is that, and again, I want to be very clear here is that we are saying we could not bring constitutional claims related to. Is there a transcript? I do not have a transcript. Because you're making a representation to us that I would like to get documented. Yes, Your Honor. And I don't, I don't have the, the transcript of that. I don't know if a transcript. Okay. You could, you could submit it. I assume the court would submit, would accept a supplemental filing. Yes, Your Honor. And I don't know the, whether or not a, a transcript was made of that or not. But you understand this point is an essential point to your argument. If the court itself specifically said, we can't hear your constitutional arguments, that's sort of at the core of what you're telling us. Well, Your Honor. And it's weird to bring it up here at 0-0-0-0. And I apologize, Your Honor. It wasn't raised until the other side. No, it's been raised throughout. Well, but Your Honor, the, the issue here is, and I apologize. I am out of time. May I finish? Finish your answer. Your Honor, we're saying we could not raise the constitutional claims related to the repeat offender program. We are not saying because it says in the statute that you can raise illegality against the BFC orders. That's what we raised was the illegality towards that. That is different from the repeat offender program and what was going on in that circumstances related to the constitutional issues there. Okay. So unless anybody has any more questions, we're going to let y'all go. And this is the end of our OA's today. We will be back tomorrow at 9am and we will of course make decision about your case. Thank you. Thank you.